[Nos. 12584, 13029.  In Bank. — January 9, 1890.]

# KATE KENNEDY, RESPONDENT, v. BOARD OF EDUCATION OF THE CITY AND COUNTY OF SAN FRANCISCO, APPELLANT.

APPEAL — REVIEW OF NEW TRIAL ORDER. — When the statement on motion for new trial contains no sufficient specification of insufficiency of the evidence to justify any of the findings of fact, and the specified errors of law therein seem to be groundless, and are not urged by counsel for appellants, the order denying a new trial should be affirmed.

SCHOOL LAW — CONSTRUCTION OF CODE — POWER OF CITY BOARD OF EDUCATION — REMOVAL OF TEACHER ELECTED WITHOUT LIMITATION AS TO TIME — TRANSFER TO LOWER GRADE. — Construing section 1793 of the Political Code with section 1617 of the same code (which should be done since they form part of the same statute upon the same subject), a teacher elected by a city board of education, without limitation as to time, is entitled to hold the position while competent and faithful, and can only be dismissed for violation of the rules of the board of education, or for incompetency, or for unprofessional or immoral conduct; nor can such teacher be transferred against his will to a school of lower grade, without contravention of the law.  Fox, J., and McFARLAND, J., dissenting.

ID. — AMENDMENT OF CODE — RETROSPECTIVE OPERATION — ELECTION OF TEACHER BEFORE AMENDMENT. — The clause of section 1793 of the Political Code, forbidding the removal of teachers except for cause, which was added by amendment in the year 1881, applies to all teachers elected by boards of education, and protects them in the right to continue in their positions, whether they were elected before or after its enactment.

ID. — TRANSFER OF TEACHER — REMOVAL FROM GRADE. — The statute does not forbid the transfer of a teacher by the board of education from one school to another of the same grade, but merely guarantees the right of the teacher to continue in the grade to which he was elected under his city certificate.  Removal from the grade in which the certificate and the statute confer the right to teach is as much a violation of the statute as if the teacher were dismissed without cause, and not given another position.

ID. — SCHOOL LAW OF SAN FRANCISCO — CONSOLIDATION ACT — SUBJECTION OF CITY CHARTER TO GENERAL LAWS. — The general provision of the Political Code as to the control of city schools by the board of education are applicable to the city and county of San Francisco; and it is not governed by the consolidation act alone.  The general statute which applies to all cities must control special statutes made applicable to particular cities.

ID. — RULES OF BOARD OF EDUCATION. — The rules adopted by the board of education cannot control the provisions of the statute, and are immaterial in determining the statutory rights of a teacher.

ID. — RESTORATION OF POSITION FILLED BY ANOTHER TEACHER. — The
fact that another teacher has been placed in the position from which the
teacher originally entitled thereto has been unlawfully removed cannot
affect the right of the removed teacher to a *mandamus* to regain the
position. The position is not in the nature of an office, within the rule
that *mandamus* cannot be used to regain an office claimed by or in pos-
session of another. Fox, J., and MCFARLAND, J., dissenting.

ID. — MANDAMUS — RESTORATION OF TEACHER. — *Mandamus* is the proper
remedy to restore a teacher in the public schools to a right given by ex-
press law, from which he is unlawfully precluded.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion of the court.

*Garber & Bishop,* and *Joseph Rothschild,* for Appellant.

*Horace W. Philbrook, Hall & Rodgers,* and *Alfred
Clarke, amicus curiæ,* for Respondent.

WORKS, J.—This was a proceeding or action for a
writ of mandate to compel the defendants to admit the
plaintiff to the place and position of principal teacher of
the North Cosmopolitan Grammar School of the city
and county of San Francisco, to which she claims the
right, and from which she alleges she has been wrong-
fully excluded by the defendants.

The facts relevant to the points herein considered, as
found by the trial court, are substantially as follows:—

In January, 1887, and more than ten years next prior
thereto, " plaintiff was, and ever since has been, and
now is elected and employed by said board as the prin-
cipal teacher of said school, which is a public grammar
school of said city and county; and during all which
time she was and now is the holder of a teacher's first-
grade city certificate of said city and county; and during
all that time the salary and compensation for the duties
and services of principal teacher of said North Cosmo-
politan Grammar School has been and still is $175 per

month"; and during all that time "she was and still is eligible as said principal teacher of said school." That on January 26, 1887, upon application of the plaintiff, the board of education granted her leave of absence until May 1, 1887. At the time this leave of absence was granted, and during the entire term of plaintiff's absence, there was in force the following rule of the board of education: —

"Sec. 158. Wherever a leave of absence is granted to an assistant teacher in the primary or grammar schools for a longer period than three months, or renewed so that the total absence shall amount to more than three months, a regular teacher shall be assigned to the class; but the absentee shall be entitled to the first vacancy of like grade, or lower grade, at his or her option, officially declared after he or she reports for duty. But when a principal or an assistant has been employed in the public schools of San Francisco for a period of not less than ten years, the board may grant such principal or assistant a leave of absence for not exceeding one year; and the party to whom such leave is granted shall, at the expiration of the leave of absence, be entitled to a position of the same grade in the same school as he or she held when the leave was granted."

That on March 16, 1887, during plaintiff's absence, and without notice to her, without her consent, and without any charges against her, the board of education made an order that she be transferred to the position of principal teacher of the Ocean View School, — a public school of said city and county, — but of lower grade than the North Cosmopolitan School, at a salary of only one hundred dollars per month.

At the close of the term of her leave of absence, the plaintiff returned and demanded of the superintendent of schools and of the board of education that she be placed in what she claims to be her position of principal teacher of the North Cosmopolitan Grammar School,

which demand was refused; and on Monday, May 2, upon the first opening of the school after the term of her leave of absence, she was at said school, "and then attempted to resume the performance of the services and duties of principal teacher thereof, but was resisted in such attempt, and prevented in the performance of all and singular said services and duties, by the defendants."

On the fourth day of May, 1887, she delivered to the board of education a letter, in which, among other things, she said: "At the opening of schools, on the second day of May, 1887, I was at the North Cosmopolitan Grammar School, and was then ready, able, and willing to resume the duties of principal of that school, but I was prevented from doing so by Miss H. M. Fairchild, who claimed to prevent me by your authority, and to be herself principal of that school. I thereupon informed James W. Anderson, the superintendent, of this, and demanded of him to be reinstated in the position of principal of the North Cosmopolitan School, and to be allowed to resume the duties of that position, but he again refused, and in doing so told me that I was prevented by you from resuming those duties."

The defendants thereupon refused, and ever since have refused, and still refuse, the demands in said letter contained.

That on the twenty-sixth day of January, 1887, the following were, and ever since have been, and still are, the rules or regulations of the board of education: —

"SEC. 45. All complaints against teachers or other employees of the school department must be made in writing and verified, and shall be addressed to the secretary of the board of education."

"SEC. 80. Upon a report from the committee on rules and regulations charging a teacher with unprofessional conduct, or upon a report of inefficiency by the committee on classification, a substitute teacher, a probationer,

a regular teacher, or an inspecting teacher, may be
dropped from the rolls at any time; but no such action
shall be taken against a teacher unless such teacher has
had an opportunity of a due hearing before the proper
committee."

The plaintiff refused to accept or take the position
in the Ocean View School to which the board had or-
dered her to be transferred, but otherwise never had
violated any rule or regulation of the board of education,
nor failed to perform any duty of her position as princi-
pal teacher of the North Cosmopolitan Grammar School;
and no charge was ever made against her of which she
had notice, or against which she had any opportunity to
defend herself.

Teachers elected or employed by the board of educa-
tion have been liable to be dismissed, during the times
herein mentioned, for failure or refusal to perform the
duties and services required in the positions to which
they were, or are, respectively elected, and for the viola-
tion of the rules legally adopted by the board, as well as
for other reasons.

Ever since the second day of May, 1887, plaintiff has
been able, ready, and willing to perform all the services
and duties of principal teacher of the North Cosmopoli-
tan Grammar School.

The trial court adjudged "that plaintiff was, on the
second day of May, 1887, and ever since has been, and
now is, eligible, and elected as principal teacher of the
North Cosmopolitan Grammar School, and entitled to
perform the duties and services of principal teacher of
said North Cosmopolitan Grammar School, and to re-
ceive out of the school fund of said city and county her
salary and compensation of $175 per month, and that
defendants admit plaintiff to the use and enjoyment of
said right, and to allow plaintiff to perform said services
and duties."

The defendants' motion for a new trial having been

denied, they appeal from the judgment, and from the order denying their motion.

The two appeals have been submitted together. The statement on motion for new trial contains no sufficient specification of insufficiency of the evidence to justify any of the findings of fact; and as the specified errors of law therein seem to be groundless, and are not urged by counsel for appellants, the order denying a new trial should be affirmed.

The questions presented by this appeal are, whether the board of education had the power to remove the respondent from her position, and if not, is *mandamus* the proper remedy, or must she resort to an action for damages as for a breach of contract.

The solution of these questions depends upon the construction to be given to certain sections of the Political Code.

Section 1616 provides: "Boards of education are elected in cities under the provisions of the laws governing such cities, and their powers and duties are as prescribed in such laws, except as otherwise in this chapter provided."

Section 1617 further provides: "The powers and duties of *trustees of school districts* and *boards of education in cities are as follows:* —

.    .    .    .    .    .

"7. To employ the teachers, janitors, and employees of schools; to fix and order paid their compensation, unless the same be otherwise prescribed by law; provided, that no *board of trustees* shall enter into any contract with such employees to extend beyond the thirtieth day of June next ensuing." (Pol. Code, secs. 1616, 1617.)

Section 1617 confers upon boards of education unlimited power to employ teachers, and contains no restrictions upon their right to dismiss or remove for or without cause. Therefore, if this section stood alone, we might consistently hold that the teacher became by such

employment an employee in the ordinary sense of the term, that her right to the position must depend upon her contract, and that alone, and that the only restraint upon the right of the board to dismiss or remove her would rest in the contract, and a violation of such contract would only entitle her to an action for damages, and not to *mandamus* to be restored to her place. This section contains no limitation as to the time for which a board of education in a city may employ a teacher. There is such a limitation, but it is confined in terms to boards of trustees. Therefore, such board of education may, under this section, employ a teacher for one year, or ten, or for an indefinite time, as, for example, during the competency or good behavior of the teacher employed.

But we have another section forming a part of the same statute bearing directly upon the question, and the two must be construed together.

Section 1793 provides: ",The holders of city certificates are eligible to teach in the cities in which such certificates were granted, of schools of grades corresponding to the grades in such certificates, and when elected, shall be dismissed only for violation of the rules of the board of education, or for incompetency, unprofessional or immoral conduct. The holders of special city certificates are eligible to teach the special studies mentioned in their certificates, in all the schools in this city in which such certificates were granted."

It seems to us that this section of the code fixes the time for which the right to hold the place shall continue, at least where the board of education has not limited the time in selecting the teacher. The section does not provide for any contract to be made by the board, but does provide in plain and unequivocal terms that *"when elected"* the teacher "shall be dismissed only for *violation of the rules of the board of education, or for incompetency, unprofessional or immoral conduct."*

It is clear to our minds that it was the intention of this section to provide for just what is mentioned in it, an *election* of a teacher, and not an employment by a formal contract fixing the term of such employment. But it is unnecessary to hold in this case that the board had not the power to limit the term of service by an express contract. It is enough to say that this was not done in this instance. She was *elected* precisely as provided in this section, without limitation as to time. The action of the board and the rules adopted by it, as set out above, all indicate that this has been the understanding of the board as to the manner in which teachers should be selected and retained. The respondent, having been elected in this way, the power of the board of education to remove her is expressly and plainly limited by the section last referred to. A teacher so elected "*shall* be dismissed *only*" for the causes named in the section. It seems to us that nothing could be plainer than this. It is only the apparent or possible effect of such a provision that seems to call for any hesitation in giving the section its proper construction. It is said, with an apparent fear of disastrous consequences to our free institutions, that such a construction confers upon the teachers of our public schools life positions. But it does not confer a life position. It gives the teacher a right to hold the position so long as he is *competent* and *faithful.* When he ceases to be either his removal is easy, the means by which it may be accomplished is amply provided for, and the board of education has the matter fully within its control. Are any serious consequences likely to result from such a *status?* Why should the length of service of a competent and faithful teacher in our public schools be left to the arbitrary will of the board of education, and subject to the varying personal, and it may be political, interests of its changing members? In our judgment there is none. We think the clause in this section of the statute was intended to prevent just such results and their con-

sequences, and that it should not be construed out of existence because of a fear that the positions held by teachers may be made perpetual.

This same construction of these statutory provisions, it seems to us, determines the question of remedy against the appellant.

The writ of *mandamus* may issue in this state "to compel the admission of a party to the use and enjoyment of a *right* or *office* to which he is entitled, and from which he is unlawfully precluded." (Code Civ. Proc., sec. 1085.)

It may be conceded that a right to hold the position of teacher in the public schools would not be a *"right"* within the meaning of this section, if such right depended solely upon a *contract* with the board of education, and the term for which such position should be held were not fixed by the statute. But such is not the case. As we have seen, the term for which the respondent was entitled to hold her position was not fixed by any contract with the appellant. The duration of her term of service is fixed by the *statute*, and her removal from it was not merely a violation of a contract, but of an *express provision of law forbidding such removal.* Although her right to take the position depended upon the act of the appellant, the right to continue in it was preserved to her by the statute, and to take it from her was to deprive her of a right given her by law, and to which she has a right to be restored by *mandamus*. (*People* v. *Van Siclen*, 50 N. Y. Sup. Ct. 537.)

The object being to restore her to a right given her by law, *mandamus* is the proper remedy. And as her term of service is uncertain, and depends upon the action of the board of education, based upon the causes named in the statute, her damages could not be ascertained with certainty, and an action for such damages would not be an adequate remedy.

The clause of section 1793, which forbids the removal of teachers except for cause, was added thereto as an

amendment in 1881 (Stats. 1881, pp. 38, 64), and after the respondent was elected a teacher, but this fact does not affect the question before us. The statute applies to all teachers elected by boards of education, and protects them in the right to continue in their positions, whether they were elected before or after its enactment.

It will be observed from the statement of the case that the respondent was not dismissed entirely from service as a teacher. She was removed from the *grade* in which her certificate and the statute entitled her to teach, which was as much a violation of the statute as if she had been dismissed, and not given another position.

We do not wish to be understood as holding that the board of education has not the power to transfer a teacher from one school to another of the same grade. The statute does not guarantee to a teacher the right to continue in any particular *school*, but to continue as such teacher in a certain *grade*, and the transfer of teachers from one school to another may be necessary for the good of the schools, and should not be prohibited.

We cannot concur in the view so earnestly contended for by the learned counsel for appellant, that because the respondent is an employee, and not an officer, she may be removed at the will of the board of education. It may be conceded that this would be so ordinarily, but in this case there is a direct statutory prohibition against a removal except for cause. This, it seems to us, renders the authorities cited by counsel wholly inapplicable.

It is contended that the provisions of the code above cited are not applicable to the city and county of San Francisco, and that the consolidation act alone is applicable. But this court has held to the contrary in a number of cases. The general statute which applies to all cities must control special statutes made applicable to particular cities. (*People* v. *Henshaw*, 76 Cal. 436; *Ex parte Ah You, ante,* p. 339.)

The fact that some one else has been placed in the position to which the respondent is entitled cannot affect her right to maintain this action. It is conceded by both parties that the place is not an office, and therefore the case is not within the doctrine that *mandamus* cannot be used to regain an office claimed by and in possession of another. It may be well to say that cases may arise in which a teacher cannot compel the board of education to continue his employment, and enforce payment of his salary; for example, where the school in which he is teaching is abolished, or for any other reason the position has ceased to exist; but no such question is presented here.

We have not referred specifically to the rules of the board of education, for the reason that, in our opinion, they have no bearing on the question presented. They seem to us to be in entire harmony with the construction we have placed upon the statute, but if they were not, they could not control its provisions.

Judgment and order affirmed.

SHARPSTEIN, J., THORNTON, J., and BEATTY, C. J., concurred.

Fox, J., dissenting. — I dissent. 1. The position claimed by plaintiff was an office, in everything but name, but she disclaimed it being such, because to call it an office defeated the life estate under the constitution. But whether it be an office or a mere right to place, it is a franchise, and in it she shows by her own complaint that there is another incumbent,—one holding the place *de facto*. Mandate is not, therefore, the proper remedy. (*People* v. *Olds*, 3 Cal. 167; 58 Am. Dec. 398; *Meredith* v. *Board of Supervisors*, 50 Cal. 433; *People* v. *Harvey*, 62 Cal. 508; *Kelly* v. *Edwards*, 69 Cal. 460.)

2. I cannot subscribe to the doctrine of a life estate in the position of teacher in the public schools, which is

the effect of the leading opinion.   It is contrary to the entire spirit and intent of the constitution, and of all the legislation of the state, and in my judgment would be most disastrous to the public service.   The people of this state require that all their public servants shall be subject to frequent visitation, and at stated intervals to opportunity in the appointing or electing power to determine whether the public service can be improved by change.   Full force and effect can be given to section 1793, Political Code, without doing violence to section 1617 of the same code, and when this can be done it is the duty of the court to do it.

3. The position of a teacher is distinctly defined by the code (Pol. Code, sec. 1617) to be that of an employee. If the statutes and rules of the board determine his duties, powers, and rights, all that remains to complete the contract is his selection for the place, and it makes no difference whether that selection is made by a vote of the board, commonly called an election, by appointment, or by specially negotiated contract, it does not change the fact that he is still an employee, and that his rights are based upon his contract of employment.   Any violation of those rights was a breach of contract, for which the plaintiff has an adequate remedy at law, and in that view of the case, mandate is not the proper remedy.

4. Whatever may have been the rights of the plaintiff at the time of commencing the action, — May, 1887, — in my view of the case those rights had ceased before the entry of the judgment, — February 11, 1888, — and it was error to enter judgment declaring that she *is now* entitled to be restored to the place demanded, and to the emoluments thereof down to that date.   As I view it, her contract expired by operation of law, at the end of the school year in which the action was brought,— June 30, 1887, — and there is no pretense that she was reelected, reappointed, or that any new contract had been made with her.

McFarland, J., dissenting. — I dissent.  In my opinion, respondent shows no right, either by *mandamus*, *quo warranto*, or other proceeding, to compel the board of education to oust the present principal of the North Cosmopolitan Grammar School, who has occupied the place now for a year and a half, and put the respondent in her position.  Certainly a doctrine so destructive of the discipline, unity, and efficiency of the public school system should not be entertained, unless the statutory language upon the subject is so absolute as to leave no room for the play of ordinary and well-settled rules of construction.

If respondent's relation to appellants was merely one of employment, then, of course, *mandamus* would not lie. (And subdivision 7 of section 1617 of the Political Code, speaking of the relations between school officers and teachers, uses the words "employ" and "contract.") No one ever heard of an employer being compelled, by a judicial writ, to retain an employee in his service.  The remedy in such a case is an action for damages for breach of contract.  On the other hand, if the position was an *office*, then in the first place, as it appears that another person is in the possession of the office claiming a right to it, *mandamus* would not lie to oust her; the remedy would be the statutory action to determine the right to the office between the two contestants.  But, in any event, respondent would have to show that she is entitled to the office for some definite term which has not yet expired; and this she utterly fails to do.  The only pretense which she makes in this regard is to present the theory that the term of her office is "for life," to be forfeited only by such gross misconduct, or by such utter failure of qualification, as would warrant an extreme proceeding in the nature of impeachment.  If there be any statutory provision that must necessarily bear that construction, such provision — considering the position an office — is in contravention of section 6, article 20, of

the state constitution, which provides that the term shall not exceed four years. But in my opinion, there is no statutory provision bearing such a construction.

It is admitted that " section 1617 of the Political Code confers upon boards of education unlimited power to employ teachers, and contains no strictures upon their right to dismiss or remove for or without cause "; and that if this section stood alone, respondent could not maintain the proceeding. And respondent's case is based on section 1793, which provides that teachers, "when elected, shall be dismissed only for violation of the rules of the board of education, or for incompetency, unprofessional or immoral conduct." And the whole stress of the argument rests on the construction to be given the words " when elected "; and the construction given by respondent is, "elected for life." But is there any other nook or corner in the whole body of our statutory and constitutional law in which " elected " means " elected for life "? Why should a meaning be given the word here which it bears nowhere else, and which is in the teeth of the constitution itself? Considering the position of a teacher as an office, then, in my judgment, the word "elected" should be given its ordinary and constitutional meaning, namely, chosen for some definite term. And as respondent has not shown that she is entitled to any unexpired term of the alleged office or employment, she, in my opinion, shows no right which can be enforced by *mandamus* or otherwise.