In the Superior Court of the State of California,
In and for the County of Napa.

No. 5059

Isadore Grigsby, Plaintiff,
vs.
Mrs. P. S. King, Howard E. Roper and R. M.
Squier, as Trustees of the Board of Trustees
of Napa School District, Defendants.

R. L. THOMPSON, Judge

This is an action for injunction restraining defendants from discontinuing the services of plaintiff as a permanent teacher in Napa elementary school.

By contract, in June, 1921, and for three consecutive years thereafter, plaintiff was employed by the Napa Board of Education as a regular teacher. Each contract was for the definite period of one year. Through this entire time she served as a regular teacher in the fourth and fifth grades, except for a period of six weeks,

during which she acted as "opportunity teacher." Her compensation was $200 per month. By resolution of the Board, on May 10th, 1924, the opportunity work was discontinued, and the clerk instructed to notify plaintiff that her services would be dispensed with after June 30th. May 19th, plaintiff was served with written notice to this effect. No charges of plaintiff's incompetency or unfitness were made. Plaintiff holds herself in readiness to occupy her position as teacher and perform the services.

Plaintiff maintains that having been employed and having served as a regular teacher for more than two consecutive years in the Napa school, she thereby automatically became a permanent teacher, and her services could not be dispensed with except upon charges preferred and proven pursuant to Section 1609 Pol. Code.

Defendants claim the plaintiff was employed and served as a special teacher; that her contract was for a definite period of one year and has terminated by lapse of time; and that the "teachers' tenure act" contained in Section 1609 Pol. Code is unconstitutional in that its application only to teachers in schools of eight teachers or more is an unreasonable classification in conflict with Article I, Section II, Article IV, Section 25, of the Constitution of California, and the "equal protection clause" of the Fourteenth amendment to the United States Constitution; and that the "tenure act" is a violation of the last mentioned constitutional amendment in that it is a denial of the "equal protection of law" provision, and deprives defendants of "property

rights without due process of law," in that it attempts to preclude the exercise of the constitutional right to contract for personal services with a definite limitation of time and duration of contract.

Those portions of the teacher's tenure act," Section 1609 Pol. Code, which are challenged by defendants, are as follows:

"Boards of school trustees . . . shall have power . . . (2) To employ teachers as provided in part fifth . . . Teachers may be elected on or after May 2nd for the next ensuing year and each teacher so elected shall be deemed re-elected from year to year except as hereinafter specified . . .

(5) To employ as teachers only persons who have legal certificates . . . to serve as substitutes, probationary or permanent teachers . . .

(5-b) To fix and prescribe the duties to be performed . . .

(5-d) To classify as probationary teachers those . . . who have not been classified as permanent teachers . . . such classification to be made at the time of employment, and thereafter in the month of July of each year . . .

(5-e) To classify as permanent teachers all persons who shall have been suc-

cessfully employed as teachers by the district for two consecutive years . . . provided also that the two years of successful service shall have been performed in a district employing at least eight teachers under a principal . . . Such classification shall be made at the end of the two years of employment . . .

(5-i) To dismiss probationary teachers . . . for cause only as in the case of permanent teachers, except that on or before the 10th of June . . . the Board may give notice in writing to a probationary teacher that his services will not be required for the ensuing year . . .

(5-j) To dismiss permanent teachers, principals . . . only for one or more of the following causes, after a fair and impartial public hearing. Causes for dismissal are, immoral or unprofessional conduct, incompetency, evident unfitness, violation of the . . . laws . . . or rules of government . . .

It is not contended there was any disapproval of plaintiff's fitness, or the character of her service. No charges were preferred against her. Nor is it seriously contended that she was employed and served as a regular teacher. While there is some evidence to the effect that it was intended by the board to assign her to the task of an "opportunity teacher," and that she was actually so engaged for six weeks, I am satisfied that the

great weight of evidence indicates that she was not engaged as a substitute teacher, but was a regular teacher.

Nor was she classified by the Board as a "permanent teacher." But this classification may be a mere ministerial duty on the part of the Board, the failure to perform which should not deprive a teacher of any vested rights conferred upon her by law.

This case, however, presents a problem involving the contractual relations between an employer and an employee for the performance of **personal services.**

Section 526 C. C. P. provides that an injunction may not be granted "to prevent the breach of a contract . . . the performance of which would not be specifically enforced."

Section 3386 C. C. provides:

"Neither party to an obligation can be compelled to specifically perform it, unless the other party thereto has performed, or is compellable specifically to perform everything to which the former is entitled under the same obligation, either completely or nearly so, together with full compensation for any want of entire performance."

Section 3390 of the same code provides that an obligation to render **personal services** cannot be specifically enforced. Section 3423 C. C.

als oprovides that an injunction cannot be granted "to prevent the breach of a contract" for the rendition of personal services, except where the minimum compensation exceeds $6000 per year and is of an intellectual character, etc. There can be no remedy in specific performance unless there is a **mutuality of obligations** and remedy. Section 3386 C. C. only expresses the general rule that "mutuality of obligation" is an essential element in every enforcible contract. (13 C. J. 331.)

> "If there remains to be done under the contract acts on the part of the plaintiff of such character, either that the court cannot frame a decree to enforce them, or, that it cannot carry out such decree without unduly taxing the time and attention of the court . . . or where the contract calls for strict personal services on the part of the plaintiff as such business relations like those of an agent, etc. . . . specific performance is usually refused." (36 Cyc. 622-629.)

In this case the services of the plaintiff contracted for are strictly of a personal character. It is apparent the court could not enter a decree or enforce it, requiring plaintiff to continue to teach in an efficient and successful manner. Under such circumstances the contract of employment lacks mutuality. Greenwood vs. Building Trades Council 46 Cal. 102. For this reason specific performance will not lie. Then under the provisions of Section 526 C. C. P. in-

junctive relief may not be resorted to. It would therefore seem to me that injunction would not be the remedy in such a case as this under any circumstances.

A more serious question is involved as to whether one who has deliberately entered into a written contract, which by its undisputed terms definitely terminates at the expiration of one year, can assert that in spite of the will and intention of the contracting parties, the law has nevertheless extended the time indefinitely, or during good behaviour. This seems to challenge the well-settled rule, and fundamental principle of contracts that one has the absolute and constitutional right to specify and limit the duration of his services or contract. (6 R. C. L. 894.) This citation holds:

> "Where a contract specifies the period of its duration there is generally very little room for construction. In such case the contract terminates on the expiration of the period specified."

In Kennedy vs. Board of Education 82 Cal. 483, the Supreme Court in construing Section 1793 Political Code, which then conferred upon teachers holding certificates in counties of the first, second and third class, practically the same right of tenure which section 1609 purports to grant to all permanent teachers in schools of eight or more teachers, held that mandamus would lie to restore a teacher to her position, where no charges had been preferred against her.

The constitutionality of Section 1793 Political Code, was not involved in the Kennedy decision, and I believe, has never been raised as to that section. Mr. Justice Works, who wrote the opinion, justifies the section on the theory that the perpetuation of the tenure of teachers would tend to elevate the standard and efficiency of our public school system. He upheld the law on the theory that it provided merely for the "election" of a teacher, and not the formal "employment by contractual relations." It does not appear that the contract in that case was for any definite period of time. And since there was no specific time at which the services were to terminate, it was held that Kennedy was automatically elected for a period of time so long as she was competent and faithful. And that she was entitled to hold her position and draw her salary for life, in the absence of the preferring and proof of charges of unfitness.

Two of the justices, Fox and McFarland, dissented. Mr. Justice Fox said, "I cannot subscribe to the doctrine of life estate in the position of teacher in the public schools. It is contrary to the entire spirit and intent of the constitution."

Mr. Justice McFarland said, "No one ever heard of an employer being compelled by a judicial decree to retain an employee in his service."

In the case of Marion vs. Board of Education 97 Cal. 606, this same section of the code was again before the Supreme Court. Mr. Justice

Garoute wrote the opinion, from which there
was no dissension. Speaking of the Kennedy
case, he said:

"That case goes quite far enough, and
the principle here insisted upon carries
the doctrine way beyond anything there
declared. In the Kennedy case the elec-
tion of the teacher was for no stated,
definite time, and it was not held in that
case that the Board had no power to
elect for a certain definite period . . .
If the Board should employ a teacher for
one year, it would be absurd to say that
it could not dispense with the services of
such teacher at the end of the year . . .
"While the statute as construed in the
Kennedy case gives the teacher a life ten-
ure when elected without specifying the
term of service, we see no reason why a
Board of Education has not the power to
elect a teacher for a month, or for a year.
Under the Kennedy case the Board of
Education of Oakland had the power to
elect petitioner for life, but its power was
not exercised to that extent, and her elec-
tion by explicit terms was confined to a
period of one year. We find nothing in
the law denying the right of the Board
to exercise such a power . . .

If we concede petitioner's petition to
be true, that the board had no power to
elect for one year, then her cause still re-
mains without merit, for the action of

the board in electing her was then void, and then no election whatever was had."

The language of the Marion case just quoted, seems to exactly fit the case at bar. In this case, it is agreed that plaintiff was **employed** for three consecutive years, for the definite term of one year by each contract. Section 1609 does not appear to artitrarily confer upon all teachers a life tenure. Paragraph second provides that "teachers **may** be elected on or after May 2nd for the next ensuing school year, and each teacher so elected **shall be deemed re-elected from year to year, etc."** This provision seems to contemplate a presumption of re-election from year to year, in the absence of a formal definite contract. I think it cannot be said this language would preclude an individual teacher and a Board of Education from entering into a formal definite written contract of employment, as the Marion case says, for a month, or a year, or ten years, with the absolute assurance that the employment would terminate at the exact time when the contract specified. I am therefore of the opinion that this specific contract definitely fixing the duration of employment does not conflict with the provisions of Section 1609. And that having been employed from year to year, for the term of one year only, she became in effect a probationary teacher, and her services could therefore be dispensed with by the service of written notice pursuant to subdivision (i). This is precisely what the Board undertook to do. I think it was effective.

The following cases also announce the conclusion that a contract of employment of a teacher terminates when the duration of time is definitely fixed.

. (Loehr vs. Board of Education 12 Cal. App. 671).

(Barthel vs. Board of Education 153 Cal. 376).

(Clark vs. Board of Education 42 CAD 740).

The defendant challenges the constitutionality of the "teacher's tenure act." Plaintiff raises the question as to whether that claim is not waived by defendant's failure to specifically plead the unconstitutionality of the act. However, defendant did interpose a general demurrer on the ground that the complaint failed to state a cause of action.

I am cited to no authority holding that the constitutionality of an act must be specifically pleaded. In criminal matters "the constitutionality of a statute . . . may be questioned at any stage of the proceedings, on the principle that an unconstitutional law is wholly void and has no effect." (6 RCL 96.) "Where an attack is made on the constitutionality of a statute it is generally conceded that it is unnecessary to plead it specifically." (6 RCL 96 No. 97.) I am inclined to think the general demurrer would be sufficient to preserve defendant's right to challenge the constitutionality of the act.

Article IV, Section 25 of the Constitution of California provides: "The Legislature shall not pass local or special laws in any of the following cases:

(27) Providing for the management of common schools;

(28) Creating offices, or prescribing the powers and duties of offices in . . . school districts.

(19) Granting to any corporation, association or individual any special or exclusive right, privilege or immunity."

Article I, Section II of the same constitution provides:

"All laws of a general nature shall have a uniform operation."
Article I, Section 21 provides:

"No special privileges or immunities shall ever be granted . . . nor shall any citizen, or class of citizens be granted privileges or immunities, which upon the same terms shall not be granted to all citizens."

The 14th amendment to the United States Constitution provides:

"No state shall make or enforce any law which shall abridge the privileges or

immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, **nor deny to any person within** its jurisdiction the equal protection of the laws.

I am aware of the fact that a trial court should never declare a statute unconstitutional except in a case free from doubt. And that every intendment is in favor of the constitutionality of the acts of the Legislature. (5 Cal. Jur. 612.) But I am utterly unable to reconcile this teacher's tenure act with the constitutional guarantees on any logical or reasonable hypothesis. It seems to be at fatal variance with respect to two scores, at least. The able editor of Ruling Case Law, Vol. 6, page 275, says:

"Since an employee cannot be compelled to work against his will, it is generally recognized that he is at liberty to refuse to continue to serve his employer. In this respect, the rights of the employer and the employee are equal. **Any act of the Legislature that would undertake to impose upon the employer the obligation of keeping one in his service whom, for any reason, he does not desire, would be a denial of his constitutional right to make and terminate contracts, and to acquire and hold property.** Equally so would be an act . . . intended to require one to remain in the service of another whom he did not desire to serve."

Toney vs. State (Ala.) 3 Ann Cas and note; 67 LRA 286.

Shaw vs. Fischer (S. C.) 102 S. E. 325.

It will be noted that the foregoing language confirms the criticisms of Justices Fox and Mc-Farland respecting the opinion in the Kennedy case. Again the same author says: (6 RCL 271.)

> "A law depriving laborer and employer of the right to contract with one another would be in violation of the Fourteenth Amendment . . . The right to contract with reference to labor necessarily includes the right to fix the price, the terms, the payment, etc. . . ."

The teacher's tenure act, however, does not conflict with the Fourteenth Amendment of the United States Constitution, provided it is so construed as to mean that in the absence of a contract of employment definitely terminating the services at a specific time, that under such circumstances only will the provisions of the life tenure act apply.

By the terms of Section 1609, teachers who have served successfully for two years in schools of eight or more teachers under a principal, are granted a life tenure; while in schools of seven or less teachers, this privilege is withheld.

In this act the Legislature was dealing with teachers as a class. It appears that a purely

arbitrary classification has been attempted between teachers employed in schools of seven teachers or less, and those of eight teachers or more. I am unable to satisfy myself there is any natural, reasonable or logical cause for this distinction. The act seems to confer upon a favored class most valuable benefits which are denied to others of the same class, and under substantially the same circumstances, because forsooth, they chance to be employed in schools possessing a faculty which differs in numbers by just a single member. Indeed this unjust discrimination might tend to greatly augment the larger schools, and cripple the smaller ones. The hope of a life tenure would tend to make teachers avoid the smaller schools and seek employment in the larger ones only. Thus the act becomes an unjust discrimination against not only a class of teachers, but against a less favored class of schools as well. This discrimination, too, would tend to increase the efficiency of the larger, and already overcrowded institution, to the detriment of the less fortunate ones already handicapped by the tendency of the times.

I assume that this life tenure was bestowed upon the theory that it would encourage more capable and worthy persons to adopt and qualify themselves for the profession of teaching. It is prooffered in the nature of a merited reward for extended and faithful services. The attracting of higher typed individuals, and higher classed service certainly would enure to the benefit of the school system. This is highly com-

mendable, both for the benefit of the teachers and the welfare of the system.

Many splendid teachers have faithfully and loyally devoted their lives to the moral and intellectual training of our children. This character of service is most important to the welfare of the children and the character of our nation. Many such splendid and faithful teachers have found themselves stranded in their declining years. The life tenure of worthy teachers is a wise and just reward for meritorious service.

But if the life tenure is just and valuable and is a merited reward for teachers who chance to serve in a large building with a faculty of eight or more teachers under the direction of a prin- the same terms to all teachers and to all schools cipal, why not extend the favor equally upon under like circumstances? What natural distinction is there between schools with a faculty of seven teachers, and the identical school with a faculty of eight or more teachers? I see absolutely no essential difference between them. And if none exists, the classification is in violation of the constitution and is void.

I can understand that a valid distinction might be drawn between such institutions as universities, colleges, junior colleges, high schools and grammar schools because of the necessary difference in government and system demanding an entirely different class of service. But to say that the privilege of a life tenure should be conferred upon teachers of any one of these classes because

it possessed eight or more teachers, and withhold it from identically the same class because it has less than eight teachers appears to be purely arbitrary and without natural cause or just reason.

The constitutionality of acts affecting this subject of classification has led to a varied and tremendous mass of litigation in both State and Federal Courts. A complete and able discussion of this subject of lawful classifications will be found in 6 RCL beginning at page 373, which will amply repay reading.

The first principle to be applied in determining the validity of classifications is given as follows:

> "In determining the legality of classification for legislative regulation, the subject to be regulated, the character, extent and purpose of the legislation, the class of persons legally and naturally affected by the legislation, and the particular classification and regulation adopted by the statute, should be considered." (6 RCL 375.)

In the leading case of Connolly vs. Union Sewer Pipe Co., 46 L. Ed. (U. S.) Vol 184, page 556, Mr. Justice Harlan said:

> "What may be regarded as a denial of the equal protection of the laws is a question not always easily determined. No rule can be formulated that will cover every case. But upon this gen-

eral question we have said that the guaranty of the equal protection of the law means, 'no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.'

"The difficulty is not met by saying . . . that the state may enact laws, in its discretion, making classification of persons, corporations, etc. . . . in order to subserve public objects. For this court has held that classification must rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily, and without any such basis. Arbitrary selection can never be justified by calling it classification. . . . No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government. . . . "

In the case of Truax vs. Corrigan 257 U. S. 312, it is held:

"The legislative discretion to grant or withhold equitable relief in any class of cases must, under the equal protection of the laws clause of the 14th amendment, be so exercised as not to grant relief to

one and deny it to others under like circumstances and in the same territorial jurisdiction."

In this case Chief Justice Taft delivered the opinion. He further says:

"Our whole system of law is predicated on the general fundamental principle of equality of application of the law. 'All men are equal before the law' and 'This is a government of laws, and not of men,' and 'No man is above the law.' These are all maxims showing the spirit in which Legislatures are expected to enact law.

"The framers of our constitution were not content to depend on mere maxims as to the spirit of equality which might be insisted on by local public opinion. They embodied that spirit in a specific guaranty. The guaranty was aimed at undue favor and individual or class privilege on the one hand, and hostile discrimination or oppression, on the other hand.

"The 14th amendment does not prohibit legislation which is limited either in the objects to which it is directed or by the territory in which it is to operate. It merely requires that all persons who are subject to the legislation shall be treated alike, under like circumstances and con-

ditions both in the privilege conferred and the liabilities imposed. The guaranty was intended to secure equality of protection not only **for all, but against all similarly situated.** Indeed protection is not protection unless it does this. Immunity granted to a class, however limited . . . is just as clearly a denial of equal protection of the laws to the latter class, as if the immunity were in favor of the larger class.

"These provisions are universal in their application to all persons within the territorial jurisdiction, without regard to difference of race, color or nationality. **And equal protection of the laws is a pledge of the protection of equal laws.**"

This language was used with reference to the provisions of a statute of Arizona denying the remedy of injunction in what is commonly termed "picketing cases" over labor troubles between employer and employee.

The test in 6 RCL further says:

"A law that is made applicable to one class of citizens only, must be based on some substantial difference between the situation of that class, and the other individuals to which it does not apply, and must rest on some reason on which it can be defended. The general rule is that a classification must always rest on some difference which bears a natural, reason-

able and just relation to the act in respect to which the classification is proposed, and that a classification will be upheld if it is based on such a foundation. A law is not general because it operates on all within a class unless there is a substantial reason why it is made to operate on that class only, and not generally on all who are similiarly situated (Pg. 381.)

"It has also been said that the reason for the classification must inhere in the subject matter, and must be natural and substantial, and must be one suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity and propriety of different legislation with respect to them. If there is any real difference between persons, occupations or property, the state cannot make one in favor of some persons over others.

"Where size is not an index to admitted evil, the law cannot discriminate between great and small.

"No impediment should be interposed to the pursuit of any one, except as applied to the same pursuits of others under like circumstances; and no greater burdens should be laid upon one than is laid upon others in the same calling and conditions." (Page 400.)

"In all cases where classification is made for the purpose of conferring a special privilege on a class, there must be some good and valid reason why that particular class should alone be the recipient of the benefit."

To the same effect are the California decisions entitled People vs. Central Pac. Ry. Co. 83 Cal 393, and Martin vs. Superior Court 68 CAD 7, and in Sacramento vs. Swanson 29 Cal. AP. 212.

"Where a few are excluded from the privileges accorded to many, or particular persons are excepted from the operation of a general law, such discrimination, if arbitrary or unreasonable . . . will render it void." 5 Cal. Jur 821, 828, 829.

In Re Raleight 177 Cal. 746 it was held that an act which was designed to require real estate brokers to pay a state license, but which exempted corporations from the requirement, was class legislation and void. In Early vs. Board of Education, 55 Cal. 489, an act designed to fix teachers' salaries in "consolidated cities and counties of 100,000 inhabitants" was held unconstitutional. In ex parte Brady 43 CAD 226 it was held that the act was void which attempted to declare that in counties of the first class sessions of the Superior Court must be held very clear indeed that no valid reason can be furnished for the exclusion of teachers in schools

of seven teachers only, from the benefits of this act. I am of the opinion that this act is for this reason an unjust discrimination and void.

It seems to me there are three distinct reasons in all cities contained therein of a population of 50,000 or more. This was special legislation. It was intended to provide for a Superior Court at Long Beach by this act.

But it is useless to multiply cases, for after why plaintiff may not recover in this action.

(1) Injunction will not lie for a breach of all, there appears to be no case based upon the exact facts here presented. The matter must be determined upon principle. And it seems contract for the performance of personal services.

(2) The enforcement of the section, according to the view of plaintiff, would be denying the right of employer and employee to contract for a definite specific period of time.

(3) It is an unjust discrimination against a class of schools and of teachers.

For the foregoing reasons judgment should be entered against plaintiff. It is so ordered. Let findings be prepared accordingly.

<div style="text-align:center">

R. L. THOMPSON,
Judge, Sonoma County.