CLEMENTE PEREDA, Petitioner and Appellant, *v.* JOSÉ PADÍN ET AL., Respondents and Appellees.

No. 6884. Argued May 6, 1936.—Decided May 21, 1936.

*Gilberto Concepción de Gracia, A. Casanova Prats, L. Vergne Cortés, C. Santana Becerra,* and *J. Paniagua Serracante* for appel-

lant. *C. Ruiz Nazario* for appellee *Mr. Padín. B. Fernández García, Attorney General,* and *T. Torres Pérez, Assistant Attorney General,* for appellees.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

Petitioner and appellant in this case filed in the District Court of San Juan a petition for a writ of mandamus to compel the Board of Trustees of the University of Puerto Rico to reinstate him in his employment as Assistant Professor of Pedagogy, from which he alleged he had been illegally removed.

Petitioner alleged that on May 25, 1934, the Board of Trustees contracted his services as Assistant Professor of Pedagogy in the University of Puerto Rico, for the period of one school year, from 1934 to 1935; that petitioner has complied with and is willing to continue to comply with all the obligations imposed upon him by said contract; that prior to September 2, 1934, the Chancellor of the University brought charges against petitioner, based on section 3 of Chapter XVII of the Regulations of the University and of the Board of Trustees, which provides that "an irreproachable character and a faultless private life free from all just criticism, must prevail in all persons serving the University, and that any deficiency in said qualifications will be construed as strictly as if it were a deficiency in the academic preparation"; that on September 5, 1934, the Board of Trustees suspended petitioner from office and salary and on the 19th of the same month it separated him permanently from his office on the ground that his conduct was incompatible with his office; that such action was taken without notice to the petitioner, without giving him an opportunity to defend himself, without just cause, without the charges being proved, and abusing the discretionary power which the law confers on the respondent board; and that petitioner exercises the remedy of mandamus because he lacks any other adequate legal remedy.

The lower court issued an alternative writ of mandamus, by which it ordered José Padín, Félix Córdova Dávila, Clemente Ruiz Nazario, Francisco Parra Toro, Felipe Carro, Jaime Annexy, Rafael Martínez Nadal, Francisco Capó, and Rafael Menéndez Ramos, in their capacity as Trustees of the University, to reinstate petitioner in his office or to appear and show cause why the writ sought should not be issued.

The respondent José Padín, in his capacity as President of the Board of Trustees, appeared before the court to move for the annulment of the alternative writ, and alleged: (a) that the petition did not state facts sufficient to authorize the issuance of the writ of mandamus or to state a cause of action against the respondents; (b) that the court has not acquired jurisdiction to issue the writ against all the respondents; and (c) that petitioner has an adequate remedy at law, such as an action for damages for breach of contract.

Respondent José Padín filed at the same time his answer, in which he denied that the charges brought against petitioner were based exclusively on the cited section of the Regulations, and alleged that the Board of Trustees, in accordance with section 8 of Act No. 50 of July 21, 1925 (Session Laws, p. 282), has authority to remove the petitioner from his position when in the judgment of the board the interests of the university so require it, without the necessity of bringing charges or of giving him an opportunity to be heard in his defense; that although the board had authority to remove petitioner without hearing him, however, at a meeting held on September 5, 1934, it was decided to inform petitioner of the charges that had been brought against him and to allow him a period of ten days to answer them; that petitioner was duly notified of the decision of the board and received a copy of the charges on September 8, 1934; that petitioner never answered the charges officially, nor applied in any way to the Board of Trustees for a hearing; that petitioner published his answer in the newspapers,

in which he admitted the truth of the facts charged and made statements contrary to the good interests of the university; and that on September 19, 1934, the Board of Trustees, after ascertaining that the charges had been notified to petitioner and that the latter had not filed an answer, proceeded to investigate the charges by an examination of witnesses and to remove petitioner from office.

The said respondent further alleged that petitioner was not and never was a public officer or employee; that the relationship which existed between petitioner and the Board of Trustees was derived from a consensual bilateral or mutual contract for the hiring of professional services, of a personal nature, the performance of which could not be compelled by mandamus, nor in any other form; and lastly, that the court lacked jurisdiction over the other defendants.

The district court considered the legal question raised by the pleadings of both parties, and without going into the merits of the case, it denied the petition and annulled the alternative writ it had issued. Thereupon an appeal was taken from said judgment.

On the day set for the hearing of this appeal, the respondent and appellee, José Padín, filed a motion to dismiss the appeal on the ground that this court lacked jurisdiction over the person of the other eight respondents, none of whom had been summoned in the proceeding in the lower court, or notified in any manner of the alternative writ issued by said court. It is alleged in the motion that the only defendant who was summoned and notified of the writ and who appeared before the court, was Dr. José Padín, President of the Board of Trustees; that none of the other defendants appeared in any form, nor submitted themselves in any way to the jurisdiction of the lower court, or of this Supreme Court; and that the latter lacks authority to hear this appeal, because as said eight respondents were not summoned and are not before it, this court can not proceed to pass upon an appeal the object of which is to obtain the reversal of a judg-

ment favorable to said respondents, who would be affected by such reversal if the same were ordered.

We must take up and decide the preliminary question of whether or not this court has jurisdiction to consider and decide the errors attributed to the lower court.

██ We have carefully examined the record of this case and there is nothing in it to show that the eight respondents, who together with Mr. José Padín constitute the Board of Trustees, were summoned to appear before the district court, nor that they were notified of the alternative writ, nor that they had individually submitted to the jurisdiction of the lower court.

The judgment roll filed in this court does not contain either the summons or the proof that it was served on said defendants, or any entry to show that the default of the same was noted, as required by sections 233 and 299 of the Code of Civil Procedure, 1933 ed. Section 303 of the same code reads thus:

"If the appellant fails to furnish the requisite papers, the appeal may be dismissed."

On the above legal provisions counsel for respondent José Padín bases his motion to dismiss the appeal for lack of jurisdiction over the persons of his eight associates of the Board of Trustees of the University.

At first sight, the appellee seems to be absolutely correct. However, a careful reading of the record of the case reveals certain facts which can not be overlooked and which in our judgment weaken the apparently strong position of appellee.

Act No. 50, approved July 21, 1925, entitled an "Act to Reorganize the University of Puerto Rico" provides:

"Section 2.—The Board of Trustees appointed in accordance with the provisions of section 3 of this Act, and their successors in office, shall be and are hereby constituted a corporation under the name 'The University of Porto Rico,' and under that name shall have the right of suing and being sued, of acquiring and holding real and

personal property, of mortgaging or selling the same, of contracting indebtedness, of making contracts, etc.''

In accordance with the legal provision above transcribed, each of the persons constituting the Board of Trustees and their successors, upon accepting the office of trustee, merge their individual personality into a new legal entity or corporation which is to act in the sphere of business under the name of ''The University of Puerto Rico.''

Any person who believes himself entitled to any cause or right of action against the Board of Trustees collectively as a corporation, may direct his complaint against ''The University of Puerto Rico,'' and in accordance with the provisions of section 93 of the Code of Civil Procedure, 1933 ed., he may bring within the jurisdiction of the court the entire Board of Trustees as a corporation through the service of the summons on the President of the corporation, that is, the President of the Board of Trustees of ''The University of Puerto Rico,'' who in this case is the respondent Dr. José Padín.

It is true that the complaint in this case was brought against the nine respondents, mentioning the name of each and adding the words ''in their capacity as members of the Board of Trustees of the corporation 'The University of Puerto Rico,' '' when it should have been brought against ''The University of Puerto Rico'' simply or with the addition of the name of the persons constituting the Board of Trustees. But that is only a mere formal defect which may be cured by subsequent acts of a person with authority to cure it and to subject the Board of Trustees as a corporation acting under the name of ''The University of Puerto Rico,'' to the jurisdiction of the court before which the action was begun.

We have no doubt that if the action had been entitled ''Clemente Pereda v. The University of Puerto Rico,'' the service of the summons on Dr. José Padín, President of the Board of Trustees, would have been sufficient to subject the

corporation, that is, the entire Board of Trustees, to the jurisdiction of the lower court.

Although the judgment roll does not show that any person was summoned, it appears that Dr. José Padín appeared in the lower court to request the annulment of the alternative writ and to answer the rule to show cause, and that in both cases he did it "as President of the Board of Trustees of the University of Puerto Rico."

We must hold that any technical defect which may have existed in the title of the case was cured by the appearance of defendant Padín in the manner we have indicated; and that this court has jurisdiction to consider the only legal question submitted to our decision by the present appeal and which can be stated thus: Is a professor of the University of Puerto Rico, who has been engaged by the Board of Trustees to render professional services to said institution during a specified school year, a public officer or employee of the People of Puerto Rico, included within the Civil Service and hence entitled not to be separated from the service except upon charges proved and after he has had an opportunity to be heard in his defense?

 Section 2 of the Act to reorganize the university, *supra,* constituted the Board of Trustees into a corporate entity under the name of "The University of Puerto Rico," and conferred upon the artificial person so created all the powers generally conferred by law on corporations, especially the power to make contracts, and to do or cause to be done everything necessary for the fulfillment of its mission as an educational center.

Section 3 of said act has entrusted the internal management of the university to a Board of Trustees, which has been invested by section 7 with powers to establish the position and fix the salary and emoluments of professors and teachers in the university, and to make or prescribe, rules, orders, and by-laws for the management of the institution. Section 8 gives the Chancellor power to appoint the profes-

sors, teachers, and employees of the university to the positions established by the Board of .Trustees, which must approve the appointments before the incumbents enter into office; and provides that *the Board of Trustees shall have power to remove from office any employee of the institution when, in its judgment, the convenience of the institution so requires.*

This court has recently decided, that the clear and evident purpose of the University Reorganization Act was to organize said educational center as a legal entity entirely separate and apart from the entity "Insular Government of Puerto Rico," and to grant it full powers in order that it may act freely under the rules and restrictions imposed by the Board of Trustees on its officers and employees and without regard to the provisions of the Civil Service Act which regulate the appointment and removal of the officers and employees of the Insular Government of Puerto Rico. See: *Maura v. Pension Board, ante,* p. 840, and *Vincenty v. Board of Trustees,* 45 P.R.R. 96.

The only act known to us which regulates the removal of public officers and employees is the Civil Service Act (Act No. 88 of May 11, 1931, p. 534), which provides:

"Section 28.—*Removals.*—No person holding an office or place in the *classified service,* shall be removed or discharged except for just cause, upon written charges, and after an opportunity to be heard in his own defense. . . ." (Italics ours.)

The Classified Service comprises all officers and employees of the Insular Government not specifically included in the Unclassified Service; and the appointments and removals of said officers can only be made in the manner prescribed by section 28, *supra.* See section 5 of the Civil Service Act.

The said section 5 further provides that until the appointment of officers and teachers of the public schools are made in accordance with the act, such officers and teachers shall remain in the Unclassified Service.

Our attention has not been called to any law which provides that the officers and teachers of the public schools must be appointed in accordance with the Civil Service Act and Rules.

And in the absence of such a law we must hold, in accordance with said section 5, that the teachers of the public schools, are not comprised in the Classified Civil Service and hence have no right to claim the protection of section 28 of the Civil Service Act, which is applicable only to officers and employees appointed in accordance with said act and included in the Classified Service.

Section 2 of Chapter IX of the Regulations of the University of Puerto Rico reads thus (italics ours):

"DURATION OF APPOINTMENT

"Section 2.—Although the Board of Trustees is bound under the by-laws to appoint each year the members of the faculty and all other employees, it will try to make permanent appointments, subject to the continuation of efficiency in the service . . . . ; and *the Board of Trustees reserves the right to terminate the services at any time it deems it convenient in the interest of the University. Every employment in the University must be accepted under these conditions.*"

Under said conditions of the Regulations and with knowledge of the powers which the University Reorganization Act has vested in the Board of Trustees, there was established the relationship that existed between the University of Puerto Rico and Professor Clemente Pereda during the school year 1934–1935. That such relationship was of a contractual character is admitted by petitioner himself when he alleges in the second paragraph of his petition: "That under date of May 25, 1934, the Board of Trustees of the University of Puerto Rico made a contract for the services of petitioner and appointed him Assistant Professor of Pedagogy for the period of one school year comprising the full scholastic course for the year 1934 to 1935."

In the case of *State ex rel Sittler* v. *Board of Education,*
49 L.R.A. (N. S) 62, the facts were almost identical with
those of the instant case. There the petitioner had been hired
to teach in the public schools under a contract which provided
that the board could remove her at any time, upon thirty
days' written notice, if her work or conduct were not satis-
factory to said board. When petitioner was removed from
her position by order of the board, she applied for a writ of
mandamus to be reinstated in her position, and when the writ
was denied by the district court she appealed. In a decision
affirming such denial the Supreme Court of New Mexico said:

"A fundamental error lurks in the argument of counsel for ap-
pelant, to the effect that mandamus can be maintained under the cir-
cumstances in this case. It is a general principle of universal ap-
plication that mandamus is not an available remedy for enforcement
of contract rights, because there is another adequate remedy in the
ordinary course of law, in the form of an action for damages.
(Citations.)

"It is only where the teacher, by positive provision of law, has
a fixed tenure of office, or can be removed only in a certain pre-
scribed manner, and where, consequently, it is the plain ministerial
duty of a school board to retain him, that mandamus can be main-
tained. . . .

"A leading case on this subject is *Kennedy* v. *Board of Educa-
tion,* 82 Cal. 483, 22 Pac. 1042. It appears that in California, by
reason of the terms of their statute, the holders of city certificates,
when elected, can be dismissed only for violation of the rules of the
board of education, or for incompetency, or unprofessional or im-
moral conduct. As construed by the courts there, this statute con-
fers upon the holders of such certificate, after having been once
elected to teach in a city of California, in case the term for which
the teacher is employed is not specified in the contract, a right to
hold the place indefinitely, unless removed for the causes mentioned
in the statute. . . . By reason of the terms of the statute, the court
held that a teacher once elected acquired a right of continuing and
permanent character in the nature of an office, and that, conse-
quently, there was a lack of power in the school officers to remove
her. The court clearly points out that it is only by reason of the
terms of the statute that they hold mandamus to be an available

remedy.... The court further says: 'As we have seen, the term for which the respondent was entitled to hold her position was not fixed by any contract with the appellant. The duration of her term of service is fixed by the statute; and her removal from it was not merely a violation of a contract, but of an express provision of law forbidding such removal.'

"Counsel for appellant seek to draw from our statutes a conclusion which we cannot adopt. No provision in our statutes has been pointed out which would authorize the holding that a teacher in the public schools of this state has any tenure of office otherwise than as provided by the contract which he makes with the school officers. In the absence of some controlling provision of law, we know of no reason to build up around school officers any restrictions as to the form of contracts which they may make with the school-teachers, or any restrictions upon their powers of removal. (Citations.) This is especially so where the right is specifically reserved in the contract, as in this case. The question here is whether the board had the power which it attempted to exercise, and we hold that it had."

In the case of *Lewellen* v. *Smith*, 49 Neb. 755, 69 N. W. 114, the Supreme Court of Nebraska decided that a contract to teach in the public schools is a contract for personal services; that a professor is not a public officer, nor the position an office; that the professor has an adequate remedy in an action for damages for breach of contract, in case he be separated from his position before the expiration of the period for which his services were hired; and that in a case of such a nature mandamus does not lie.

In support of his contention appellant cites the decisions of this court in the cases of *Gil* v. *Chardón*, 41 P.R.R. 210, and *Romero* v. *Gore*, 46 P.R.R. 378. We do not think that said decisions are applicable to the instant case. The petitioners in the two cases cited were public employees or officers of the People of Puerto Rico, comprised in the Classified Civil Service who could not be removed from their positions except in the manner prescribed by the Civil Service Act.

To support the contention that appellant is a public officer, the words of Justice Marshal in *U. S.* v. *Maurice,* 2 Bock. 96, Fed. Cas. No. 15747, are cited:

"An office is defined to be 'a public charge or employment,' and he who performs the duties of the office, is an officer. If employed on the part of the United States, he is an officer of the United States. Although an office is 'an employment,' it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer. But if a duty be a continuing one, which is defined by rules prescribed by the government, *and not by contract,* which an individual is appointed by government to perform, who enters on the duties appertaining to his station, without any contract defining them, if those duties continue, though the person be changed; it seems very difficult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer."

The phrase "and not by contract" which we have underlined in the paragraph above transcribed, was omitted in the citation which appears in the brief of appellant. We must presume that the omission was inadvertently made, but the fact is that with the addition of said words the definition of Justice Marshall agrees with the doctrine of *Sittler* v. *Board of Education, Kennedy* v. *Board of Education,* and *Lewellen* v. *Smith, supra,* which hold that a person employed under a contract to teach in the public schools for a stipulated period, is not a public officer but a contractual employee.

Appellant also cites the case of *Vincenheller* v. *Reagan,* 64 S. W. 278, as authority for holding that a professor of a state university is a public officer. It is true that the court held that the petitioner was a public officer. It could not reach any other conclusion, as the resolution creating the office held by the petitioner provided as follows:

"*Resolved:* (1) That the office of vice director and pomologist of the agricultural experiment station be, and the same is hereby,

created, and that W. G. Vincenheller be, and he is hereby, elected to fill said position for the term of four years, etc.

"(2) That part of the duties of said officer shall be, etc."

After the petitioner Vincenheller had been appointed and before the expiration of the period of his appointment, the Legislature of Arkansas by an act abolished the office of pomologist, and prohibited the Board of Trustees from continuing to pay any salary on that account. Vincenheller sought a writ of mandamus to be reinstated in his office, claiming that the act of the legislature abolishing the office was unconstitutional because it impaired the obligation of a contract. The Supreme Court, in affirming the judgment which denied the mandamus, said:

"Appellant also insists that the sixth section of the act of May 23, 1901, was unconstitutional, because it impairs the obligation of a contract. If the place filled by the appellant under the resolution of the board of trustees was an office, it did not impair the obligation of a contract. For the duties and obligations of an officer grow out of the law, and not out of contract, and this law is subject to amendment or repeal; and, as an incident to this power, the legislature may increase or diminish the salary, or abolish the office, unless prohibited by the constitution."

The facts of the above case were so clear and evident, that the court could but reach the conclusion that the relations existing between Vincenheller and the University of Arkansas were not of a contractual nature.

In the instant case, petitioner has also alleged the contractual nature of the relations which were established between him and the university, by stating in his complaint that the Board of Trustees engaged his services for the period of one year; and he has nowhere in his petition alleged that he was a public officer.

The Board of Trustees has attacked the sufficiency of the petition and has specifically denied that petitioner is a public officer, claiming that petitioner was a mere contractual employee.

The facts of the instant case and the decisions we have cited lead us to the conclusion that petitioner was not a public officer but a contractual employee of the University of Puerto Rico; that the relationship existing between petitioner and the university must be governed by the contract itself, which is the law of the contracting parties; and that as petitioner had tendered his services and accepted the employment subject to the express condition that the Board of Trustees reserved the right to terminate the services at any time it deemed it convenient for the interest of the university, this court lacks power to alter the contract between the parties or to investigate in a proceeding of this kind the cause or motive which the Board of Trustees may have had for exercising the right it reserved to dispense with the services of an employee when the convenience and good interests of the university so require.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.